UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **MELISSA AGUERO RAMIREZ** § | |
| *PLAINTIFF,* § | |
| § | **CIVIL ACTION NO.** |
| v. § | **JURY DEMAND** |
| § | |
| **PHARR-SAN JUAN-ALAMO INDEPENDENT** § | |
| **SCHOOL DISTRICT, DR. ALEJANDRO** § | |
| **ELIAS INDIVIDUALLY AND IN OFFICIAL** § | |
| **CAPACITY AS SUPERINTENDENT AND** § | |
| **CARLOS VILLEGAS INDIVIDUALLY AND IN** § | |
| **OFFICIAL CAPACITY AS MEMBER OF** § | |
| **BOARD OF TRUSTEES** § | |
| *DEFENDANTS* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW MELISSA AGUERO RAMIREZ** (hereinafter referred to as "Plaintiff") complaining of **PHARR-SAN JUAN-ALAMO INDEPENDENT SCHOOL DISTRICT**, (hereinafter referred to as "Defendant" or "District"), **DR. ALEJANDRO ELIAS** (hereinafter referred to as "Defendant" or "Superintendent") individually and in his official capacity as Superintendent for the Pharr-San Juan-Alamo Independent School District, **CARLOS VILLEGAS** (hereinafter referred to as "Defendant" or "Board Member" or "Member") individually and in his official capacity as member of the Pharr-San Juan-Alamo Independent School District Board of Trustees and for such causes of action would respectfully show unto the Court the following:

## I.
## PRELIMINARY STATEMENT

1.1   This is a complaint of retaliation in violation of the First Amendment of the United States Constitution, specifically, while acting under color of law, Defendants took adverse employment action against Plaintiff's employment motivated by political retaliation based on perceived political association that resulted in Plaintiff's demotion that was an adverse personnel action.

1

## II.
## JURISDICTION

2.1    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343(3), 1345, 1443, and 1441 and 42 U.S.C. Section 1983.

## III.
## VENUE

3.1    Venue in this case is proper under 28 U.S.C. Section 1391(a)(1) & (2) because the employment practices and actions alleged to be unlawful were and are currently being committed within the jurisdiction of the United States District Court for the Southern District of Texas, McAllen Division.

## IV.
## PARTIES

4.1    Plaintiff, **Melissa Aguero Ramirez**, is a resident of Cameron County Texas.

4.2    Defendant, **Pharr-San Juan-Alamo Independent School District** is a local governmental entity. Service of process may be obtained by serving Honorable Diana Y. Serna, President of Defendant's School Board at 601 E. Kelly Ave., Pharr, Texas 78577.

4.3    Defendant, **Dr. Alejandro Elias** is being sued in his individual and official capacity as Superintendent for the Pharr-San Juan-Alamo Independent School District and may be served with process at 601 E. Kelly Ave., Pharr, Texas 78577.

4.4    Defendant, **Carlos Villegas** is being sued in his individual and official capacity as a member of the District's Board of Trustees for the Pharr-San Juan-Alamo Independent School District and may be served with process at 601 E. Kelly Ave., Pharr, Texas 78577.

## V.
## FACTUAL ALLEGATIONS

5.1    Prior to Plaintiff's employment with Defendant, Plaintiff had approximately twenty-five years in the education field with fast experience in human resources at varies school districts within Hidalgo County. Plaintiff served for twelve years as the Human Resources Director

2

at Region One Services Center prior to her employment with Defendant. Plaintiff was hired on March 2, 2020, as the Chief of Human Resources by Defendant based on the recommendations of former Superintendent Dr. Jorge L. Arredondo and former Chief Officer of Academics Dr. Rolando Trevino. Plaintiff was recruited by Dr. Arredondo and Dr. Trevino because of her unblemished record and history of success at her previous position with Region One. Plaintiff had demonstrated leadership, innovation, and strong support and guidance to all that Region One served. Region One Education Service Center (ESC) is located in Edinburg, Texas with Extension Offices in Brownsville and Laredo. Region One is one of the twenty regional service centers established by the Texas Legislature in 1967 to provide a variety of school -related services to designated school districts. Plaintiff was earning approximately $100,000.00 dollars with benefits when Plaintiff left her employment at Region One to take the position as Chief of Human Resources for Defendant.

  5.2 After Plaintiff was employed as Chief of Human Resources, Plaintiff was earning approximately $159,000.00 dollars per year with benefits. Defendant's school district held a school board election on November 13, 2022. Prior to the election Ricardo Pedraza was the President of Defendant's school board with the controlling majority of its members supportive of Superintendent Arredondo.

  5.3 Leading up to the November 13, 2022, school board election at Defendant's school district, a factional split had occurred, whereby, one political faction was led by President Pedraza, while the other faction was led by Board Member Carlos Villegas. Plaintiff was hired on the recommendation of Dr. Arredondo and approved by the school board under the direction and leadership of Pedraza.

  5.4 On July 21, 2022, and July 26, 2022, Dr. Alejandro Elias was called in to meet with then Superintendent Arredondo. The purpose of the meetings were to reassign Dr. Elias from his position as Principal at PSJA High School where he had served for nearly eight years with Defendant and eighteen years at the time of the meetings as an employee for Defendant. Dr. Elias was steadfast against being reassigned to any other position within the district and voiced opposition to the possibility of being reassigned. Subsequently, Superintendent Arredondo ordered the reassignment of Dr. Elias to Director of Strategy and Planning.

  5.5 Plaintiff received an email that had been prepared for her signature as the Chief of Human Resources, providing written notice to Dr. Elias of his reassignment from Principal at PSJA

High to Director of Strategy and Planning on or about July 26, 2022. An in-person meeting took place between Dr. Arredondo and Plaintiff after Plaintiff was instructed by Arredondo to sign the notice. Plaintiff stated to Dr. Arredondo, "That she would prefer not to deliver the letter," and Arredondo stated to Plaintiff, "That he would have Dr. Trevino deliver it." The reason Plaintiff refused to deliver the reassignment notice to Dr. Elias after being ordered to sign it was that Plaintiff did not agree with the reassignment. In fact, Plaintiff informed Dr. Arredondo that the reassignment was wrong, and that Plaintiff did not want to have any involvement in the decision. Although Plaintiff did agree to sign the letter of reassignment, Plaintiff did not write the letter that was prepared for her to sign and was ordered by Arredondo to affix her name to it. During the conversation Arredondo stated to Plaintiff, "Don't you understand that if our faction does not win the election, we are out, I am gone and you're out."

　　5.6　Defendant's school board with Board President Pedraza leading the majority faction posted its regularly board meeting agenda for a board meeting to take place on August 3, 2022. Contained on the agenda was an item to name a new principal for PSJA High. In response to the proposed agenda item to be discussed, Dr. Elias who was still an employee of the district filed a lawsuit against Defendant on August 1, 2022, in the County Court at Law of Hidalgo County in Cause No.: CL-22-3108-G. The lawsuit alleged a Civil Conspiracy of PSJA ISD through its board of trustees and administration alleging that the trustees and administration entered into a conspiracy to reassign and potentially attempt to terminate Dr. Elias who filed as the Plaintiff in the suit. Plaintiff as the Chief of Human Resources, was an administrator at the time Dr. Elias filed his lawsuit and made his references.

　　5.7　The lawsuit filed by Dr. Elias against PSJA ISD alleged political retaliation. At the time the lawsuit was filed on August 1, 2022, President Ricardo Pedraza led the faction that was in support of then Superintendent Arredondo. The pro-Arredondo faction was comprised of Board President Pedraza, Board Member Jorge Palacios, Board Member Jorge L. Zambrano, Board Member Jesus A. Zambrano and Board Member Jesus Vela. The anti-Arredondo faction consisted of two board members, Cynthia Gutierrez and Carlos Villegas. In the petition filed by Dr. Alejandro Elias in the factual section as alleged by him in his own lawsuit he stated the following that was contained under section V. Facts, No. 14:

> "Specifically, Dr. Elias is currently supporting a political faction that is opposite to PSJA Board President Pedraza's interests in the upcoming November 2022 PSJA School Board Election."

The faction that Dr. Elias was supporting for the November 13, 2022, PSJA ISD Board Election were Board Members Cynthia Gutierrez, Carlos Villegas, and candidates for the PSJA ISD School Board Yolanda Castillo and Diana Y. Serna. Curiously, Dr. Elias resigned his employment from the school district after filing his lawsuit on August 1, 2022. Dr. Elias campaigned publicly and privately supporting Gutierrez and Villegas and Board Candidates Serna and Castillo. Dr. Elias' closest Polictial ally was Board Member Carlos Villegas, whereby, Dr. Elias and Villegas discussed and communicated with each other the reemployment of Dr. Elias as its future superintendent while the political campaign was ongoing after Dr. Elias had resigned his employment with Defendant's school district. Furthermore, the school district's, "Reorganization" was discussed between Dr. Elias and Board Member Villegas in the event that the anti-Arredondo majority took control of the board majority. In the event the anti-Arredondo faction that Dr. Elias was supporting won, then Plaintiff would be demoted as it was Villegas and Dr. Elias' belief that Plaintiff was politically supporting the pro-Arredondo faction of candidates.

5.8  The November 13, 2022, election resulted in Castillo, Serna, and Villegas being elected to the Defendant's school board, thus, with Cynthia Gutierrez created a majority of an anti-Arredondo faction. Dr. Elias's lawsuit was still pending after the anti-Arredondo faction had become a board majority with Carlos Villegas after the board reorganization becoming its President.

5.9  On November 21, 2022, the new board majority after the November 13, 2022, election placed former Superintendent Arredondo's employment contract on the agenda that resulted in former Superintendent Arredondo's employment ending with a negotiated settlement, only a few days after the election. On November 28, 2022, not surprisingly, a board item was placed by the new faction of Gutierrez, Serna, Castillo and Villegas naming Dr. Elias as the Defendant's new Interim Superintendent that became effective on November 30, 2022. The pro-Dr. Elias faction emerged based on the results of the November 13, 2022, election that Dr. Elias had campaigned on behalf of Villegas, Serna, and Castillo. Carlos Villegas was opposed to the reassignment of Dr. Elias from principal at PSJA High. Board Member Villegas who was elected as the Board President after the November 13, 2022, election had expressed a negative attitude against Plaintiff while Villegas was a board member. Then Superintendent Arredondo informed Plaintiff that Villegas was not a, "Fan of neither Arredondo or Plaintiff," when Villegas walked

away from Plaintiff while being introduced. Also expressing a negative attitude against Plaintiff was Dr. Elias who stated to Plaintiff that, "I don't need you, I have my own HR Department," while Dr. Elias was a principal at PSJA High, before he was reassigned with a notice signed by Plaintiff.

5.10   On December 8, 2022, Plaintiff received from Dr. Elias a notice of reclassification of position. The reassignment notice, only eight days from Dr. Elias being named Interim Superintendent, informing Plaintiff of the following that was contained in the notice of "Reclassification of Position,"

> "I have determined that it is in the best interest of the district to reclassify your current position of Chief of Human Resources to Director of Professional Development. The Chief of Human Resources position will no longer exist, nor will anyone replace you in that position."

The reclassification notice approved and signed by the new Interim Superintendent, Dr. Elias, was done only eight days from being named as Interim Superintendent. Dr. Elias was rehired by Defendant that he had sued admitting in a publicly filed document that he was a supporter of the then minority faction, finding himself now reemployed. The new faction that was elected on November 13, 2022, offered a contract to Dr. Elias as Interim Superintendent, and settled his lawsuit that was approved by the new political faction comprised of Gutierrez, Serna, Castillo and Villegas.

5.11   The reclassification of Plaintiff meant a loss of a $750.00 dollars stipend per month. The notice of reclassification written by Dr. Elias informed Plaintiff that her base pay of $159,000.00 dollars would not be affected during the 2022-2023 school year. At the time Plaintiff was notified on December 8, 2022, that her position as Chief of Human Resources was no longer in existence, Plaintiff was employed by a two-year contract with its expiration on August 20, 2024. However, Defendant attempted to cleverly disguise the demotion by changing Plaintiff's base salary from $159,000.00 dollars to $92,205.74 dollars on August 24, 2023, from Dr. Elias' decision on December 8, 2022. No reason was given by Rebeca Garza or Dr. Elias for the reduction in Plaintiff's salary that amounted to $66,794.26 dollars, other than, "The adjustment was identified by using the TASB formula to calculate your compensation for your upcoming year and your 226-workday calendar." The notice of salary adjustment was signed by Assistant Superintendent for Human Resources Rebeca N. Garza, with Dr. Elias copied with the notice on August 24, 2023. Rebeca Garza replaced Plaintiff and her job duties, although Dr. Elias wrote on December 8, 2022,

6

that Plaintiff's position, "No longer existed as Chief of Human Resources." The statement made by Dr. Elias was false as Rebeca Garza was the replacement for Plaintiff. When Plaintiff had been hired by Defendant in 2020, as its Chief of Human Resources, Plaintiff had replaced Rebeca Garza in that position. Rebeca Garza was a staunch political supporter of the same political faction as Dr. Elias that was empowered after the November 13, 2022, school board election.

5.12    Prior to the pro-Dr. Elias faction gaining control of the Board of Trustees, Plaintiff had not suffered any adverse employment action due to job performance or otherwise.

5.13    On October 8, 2022, a highly visible parade with hundreds of onlookers present attended the City Red Ribbon Parade within the jurisdiction of Defendant's school district. A highly publicized photograph appeared on social media posts of the City Red Ribbon parade. The parade is a public celebration and is highly visible to the public, since it consists of floats and vehicles moving slowly through the streets for considerable time where the Defendant's school district's jurisdiction is located. Numerous voters, parents, public officials, and the general public were attendance that would have easily amounted to at least three to five thousand onlookers. In the photograph that was posted on social media, it showed Plaintiff standing on a float for the public to see. Standing next to Plaintiff was former Superintendent Arredondo standing side by side. Also, on the same float for the members of the public to see were Board Members Jesus Vela and Jorge Palacios that were being opposed politically by Dr. Elias and the anti-Arredondo faction that ceased power on November 13, 2022, that resulted in the political retaliation against Plaintiff within just a few days after the results of the election shifted the board to Carlos Villegas and his faction.

5.14    Plaintiff was perceived by the new board majority faction to have been politically associated with and had campaigned for former board members, Ricardo Pedraza, Jesus Vela, Jorge Palacios, Jorge L. Zambrano and Jesus A. Zambrano. As a result, Plaintiff was retaliated against by the new board majority faction that was empaneled on November 13, 2022.

5.15    Plaintiff had a close working relationship with Dr. Arredondo and former Board Member and President Ricardo Pedraza that Dr. Elias and Carlos Villegas were aware of.

5.16    Plaintiff is not and was not at any time material hereto, a resident of the jurisdiction within Defendant's school district. As such, Plaintiff was not eligible to vote in Defendant's November 13, 2022, school board election.

5.17 Board Member Carlos Villegas and Dr. Alejandro Elias were aware of Plaintiff's work history with Defendant's school district in their administrative and board member capacity.

5.18 Plaintiff was hired and approved by Defendant's former board of trustees and started work in March 2020, as the Chief of Human Resources based on the recommendations of former Superintendent Arredondo. Plaintiff performed her duties as Chief of Human Resources with dedication, loyalty and hard work. Plaintiff was never reprimanded nor received any negative performance evaluations during her employment with Defendant. In fact, Plaintiff received her adverse employment action only eight days after Dr. Elias was installed as Interim Superintendent without any written evaluations being conducted by himself regarding Plaintiff.

5.19 Plaintiff successfully completed her first two-year contract with Defendant approved by the former board majority on the recommendation of former Superintendent Arredondo that was renewed by the former board majority to an additional two-year term.

5.20 At the time on December 8, 2022, Dr. Elias was acting as the Interim Superintendent. Dr. Elias was not named the district's superintendent until June 19, 2023. However, Dr. Elias claimed he had board delegated authority to reclassify Plaintiff's position as Chief of Human Resources to Director of Professional Development that resulted in a loss of pay. Carlos Villegas had been elected Board President at the time of Plaintiff's demotion and approved of it through discussions and conversations held with Dr. Elias.

5.21 Board President Villegas authorized and approved in discussions held with Dr. Elias to have Plaintiff demoted as retaliation for the perception that Plaintiff had been politically associated with Dr. Arredondo and the former pro-Arredondo board members that had constituted the majority of Defendant's board until the November 13, 2022, election, that Dr. Elias agreed with and both, therefore retaliated against Plaintiff.

5.22 The new board majority under the leadership of President Carlos Villegas and Interim Superintendent Dr. Elias set about retaliating against Plaintiff, who had either not supported their faction consisting of Gutierrez, Serna, Castillo and Villegas.

5.23 The reason that Defendants justified Plaintiff's demotion was pretextual. The true reason for Plaintiff's demotion was that Defendant Dr. Elias and Defendant Carlos Villegas retaliated against Plaintiff because of their belief and perception of Plaintiff's political association with their rival former board members political campaign. Dr. Elias and Villegas believed that Plaintiff was associated and campaigning with the political faction that both Dr. Elias and Villegas

8

were in opposition to with Dr. Elias filing a public lawsuit admitting that he was part of the opposite political faction that gained the board majority on November 13, 2022.

5.24   Defendant Dr. Elias and Board Member Villegas retaliated within nine days from the time Defendant Dr. Elias was appointed Interim Superintendent and took an adverse employment action against Plaintiff that resulted in a loss of pay on December 8, 2022, by having her stipend removed and reclassifying her position that resulted in the eventual loss of $66,794.26 dollars.

5.25   Defendant Dr. Elias and Defendant Carlos Villegas retaliatory actions against Plaintiff were motivated by the mistaken belief that Plaintiff had supported the opposing faction Ricardo Pedraza, Jesus Vela, Jorge Palacios, Jorge L. Zambrano and Jesus A. Zambrano during the November 13, 2022, school board election conducted by Defendant.

## VI.
## CAUSES OF ACTION:
## 42 U.S.C. § 1983 VIOLATION OF FIRST AMENDMENT RIGHT

### A.  42 U.S.C. § 1983

6.1   Section 1983 of Title 42 of United States Constitution provides that an individual may seek redress, by way of damages, against any person or persons who, under color of any law, statute, ordinance, regulation, or custom, knowingly subjects such individual to the deprivation of any rights, privileges, or immunities, secured or protected by the U.S. Constitution or laws of the United States. Plaintiff has been subjected to the deprivation of her Constitutional rights as set forth above and below.

### B.  Freedom of Association

6.2   Paragraph 5.1 through 5.25 are incorporated herein by reference.

6.3   Plaintiff was mistakenly perceived to be associated with and campaigning for the political faction that was opposed by Dr. Elias and Carlos Villegas during Defendant's November 13, 2022, school board election.

6.4   The First Amendment generally prohibits a government employer from discharging or demoting an employee because of the employee support of a particular political candidate. *Elrod v. Burns, 427 U.S. 347 (1976).* When an employer's motivation to demote or terminate an

employee for engaging in a political activity, the employee is protected by the First Amendment and is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983, even if the employer makes a factual mistake about the employee's (political) behavior. *Heffernan v. City of Paterson, 136 S. Ct. 1412.*

**C.  First Amendment Retaliation**

6.5    Paragraph 5.1 through 5.25 are incorporated herein by reference Plaintiff incorporates Section V herein by reference.

6.6    Plaintiff was retaliated against on the mistaken belief that Plaintiff was engaging in protected activity of supporting candidates running for the District's Board of Trustees by being demoted through adverse employment action of her employment.

6.7    Defendants violated the provisions of the 42 U.S.C. § 1983, in that Defendants, acting under the color of State law, deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and , in particular her right to hold employment without infringement of her First Amendment right to freedom of speech.

## VII.
## INDIVIDUAL LIABILITY

7.1    Paragraph 5.1 through 5.25 are incorporated herein by reference.  Defendants have acted outside the proper course and scope of their official duties as the Interim Superintendent and as a Board of Trustee, in that their individual actions were wholly outside board policy, state regulations, and state and federal laws. Individual Defendant Dr. Alejandro Elias and Carlos Villegas, retaliated against and demoted Plaintiff by reducing $66,794.26 dollars plus an additional $750.00 dollars per month in stipends. They specifically approved to eliminate Plaintiff's position on their mistaken belief regarding Plaintiff's political association that resulted in an adverse employment action.

7.2    A plaintiff suing a public official under § 1983 must file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. *Schultes v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In order to negate the defense of qualified immunity, a Plaintiff must plead sufficient facts to make it plausible that the individual's conduct: (1) violated a "clearly established federal constitutional right;" and (2) was not "objectively reasonable in light of clearly

established law." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir.2003). The law is clearly established that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment Rights. More specifically, the Supreme Court has consistently held that governmental officials are forbidden from discharging public employees for their political affiliations, (*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Bums*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)), even if the employer makes a factual mistake about the employee's (political) behavior. *Heffernan v. City of Paterson, 136 S. Ct. 1412.* Further, the Fifth Circuit has held that "[t}he law was established clearly enough in this circuit (as far back as) January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him." *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir. 1992)

    7.3    Based on the timeline of the events, it is clear that Plaintiff's demotion that resulted in an adverse employment action that was politically motivated by Defendants mistaken belief regarding Plaintiff's political association.

## VIII.
## ACTUAL DAMAGES

    8.1    By reason of the above actions alleged above, Plaintiff has been damaged in an amount beyond the minimum jurisdictional level of this court, for which Defendants are jointly and severally liable.

## IX.
## COMPENSATORY DAMAGES

    9.1    Pursuant to the federal statutes cited above, the Plaintiff is entitled to compensatory damages, to include front pay and back pay and any other relief to which she may show herself to be entitled.

## X.
## EQUITABLE RELIEF

    10.1    Plaintiff requests all equitable relief to which she may show herself to be entitled,

including front pay, back pay and/or reinstatement.

## XI.
## EXEMPLARY DAMAGES

11.1　The conduct of the Defendants was carried out willfully, spitefully, and maliciously and constitutes such an entire want of care as to be regarded as conscious indifference to the rights, wellbeing and welfare of this Plaintiff. Plaintiff is hereby entitled to recover exemplary damages to deter such cruel and undignified procedures by the Defendants in the future. Accordingly, Plaintiff requests that exemplary damages be awarded against the Defendants in an amount which exceeds the minimum jurisdictional requirements of this Court. Accordingly, Plaintiff is entitled to recover from the individual Defendants, in addition to compensatory damages, an award of exemplary damages in the amount of $1,000,000.00, such amount being necessary to deter the Defendants from repeating such wrongful acts in the future.

11.2　The foregoing acts of the Defendants sued individually were willful, humiliating, and insulting to Plaintiff and showed a conscious disregard for the rights of the Plaintiff. Plaintiff is accordingly entitled to recover from each of the individual Defendants, in addition to compensatory damages, an award of exemplary damages in the amount of $500,000.00 from each individual Defendant, such amount being necessary to deter the Defendants from repeating such wrongful acts in the future.

## XII.
## ATTORNEY FEES

12.1　Pursuant to the federal statutes under which Plaintiff sues, Plaintiff has been forced to retain the undersigned attorneys to prosecute this claim on her behalf, and she is entitled to recover necessary and reasonable attorney fees, costs of litigation, together with such additional attorney fees as may be awarded by the Court and, in the event of an appeal, to the Fifth Circuit Court of Appeals and the United States Supreme Court, and costs of Court.

## XIII.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, prays that Defendants be cited to appear and answer herein, and for a trial by jury. Upon trial, Plaintiff prays for an award against

Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, front pay, back pay, re-instatement, equitable relief, together with exemplary damages, reasonable attorney fees, costs of court, pre-judgment and post-judgment interest, and entry of declaratory relief and an injunction barring Defendants from interfering with Plaintiff's job security and such other and further relief, in law or in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully Submitted,

*/s/John L. Shergold*
John L. Shergold
Attorney in Charge

State Bar No. 00794624
Federal No. 20768

**HODGE & SHERGOLD, L.L.P.**
1805 Ruben Torres Blvd., Ste. B30
Brownsville, Texas 78521
Tel: 956/548-9100
Fax: 956/548-9102
Email: hodgeshergold@aol.com

**ATTORNEY IN CHARGE**
**FOR PLAINTIFF**

*/s/Jose R. Hernandez*
Jose (Joe) R. Hernandez
Attorney for Plaintiff

State Bar No. 00792580
Federal No. 20759

**LAW OFFICE OF JOSE (JOE) R. HERNANDEZ P.C.**
1805 Ruben Torres Blvd., Ste. B30
Brownsville, Texas 78521
Tel: 956/504-5100
Email: lawjrhth@msn.com

**ATTORNEY FOR PLAINTIFF**