United States District Court
Southern District of Texas

**ENTERED**

March 31, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| MELISSA AGUERO RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00505 |
| | § | |
| PHARR SAN JUAN ALAMO | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| ALEJANDRO ELIAS and CARLOS | § | |
| VILLEGAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melissa Aguero Ramirez is the former Chief of Human Resources at the Pharr San Juan Alamo Independent School District ("PSJA ISD"). She was hired by then-Superintendent Dr. Jorge Arredondo. In November 2022, a PSJA School Board election resulted in a change of the Board composition, with a majority of the seats going to members of a political faction that opposed the previous Board majority. Several members of this new faction believed that Aguero Ramirez supported the opposing political faction. After the new faction prevailed in the election, its leaders, including Dr. Alejandro Elias and Carlos Villegas, began to target those within the PSJA ISD that opposed them, including Arredondo and Aguero Ramirez. In December 2022, Aguero Ramirez alleges that she was demoted from her position as Chief of HR by the PSJA School Board (the "School Board") and Dr. Elias—the new Board Superintendent—in retaliation for her perceived political support of the former majority faction. Following

her demotion, Aguero Ramirez sued the PSJA ISD, Dr. Elias, and Villegas under 42 U.S.C. § 1983 for First Amendment retaliation.  (Dkt. No. 1).

Pending before the Court is Defendants' Motion to Dismiss.  (Dkt. No. 5).  For the reasons stated below, the Motion is **GRANTED in part** and **DENIED in part.**

## I.    BACKGROUND[1]

Aguero Ramirez was hired as Chief of Human Resources for PSJA ISD on March 2, 2020.  (Dkt. No. 1 at 2–3).  Then-Superintendent Dr. Jorge L. Arredondo and Chief Officer of Academics Dr. Rolando Trevino recruited her for the position based on her prior experience in the field.  (Dkt. No. 1 at 3).  Her employment was also approved by the School Board, led by then-President, Ricardo Pedraza.  (*Id.*).  The position paid a yearly salary of $159,000.  (*Id.*).

In July 2022, Superintendent Arredondo met with the principal of PSJA High School, Dr. Alejandro Elias, to inform him that he was being reassigned to Director of Strategy and Planning.  (*Id.*).  As Chief of HR, Aguero Ramirez had to sign off on the written notice of reassignment provided to Dr. Elias.  (*Id.* at 3–4).  While Aguero Ramirez did not agree with the reassignment and thought it was "wrong," she was nevertheless ordered by Arredondo to sign it.  (*Id.* at 4).  Dr. Elias, unhappy with this decision, filed a political retaliation lawsuit in state court against the School Board to contest his reassignment.  (*Id.*).

---

[1]    The Court accepts all factual allegations in the Complaint, (Dkt. No. 1), as true and views them in the light most favorable to the nonmovant, *see White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

As part of this lawsuit, Dr. Elias alleged that he was targeted by Arredondo and the School Board because of his support for an opposing political faction in the upcoming November 2022 PSJA School Board election. (*Id.* at 4–5). This faction (the "anti-Arredondo faction"), which included Dr. Elias, two current Board members, and Carlos Villegas (a candidate in the upcoming election), aimed to replace President Pedraza, Superintendent Arredondo, and their supporters (the "pro-Arredondo faction"). (*Id.*). Dr. Elias eventually resigned his position with PSJA ISD and began publicly campaigning for the anti-Arredondo faction, including for candidate Villegas. (*Id.* at 5). According to Aguero Ramirez, Villegas and Dr. Elias began discussing their plans for a "reorganization" of the School Board in the event their faction won the election. (*Id.*). This "reorganization" included hiring Dr. Elias as the new Superintendent and demoting Aguero Ramirez because of her perceived support for the pro-Arredondo faction.[2]

The November 2022 election resulted in the anti-Arredondo faction winning a majority of the seats on the Board. (*Id.*). Villegas eventually became the new Board President. (*Id.*). Later that month, Arredondo was removed from his position as Superintendent through a negotiated settlement, and Dr. Elias was hired to take his place. (*Id.*). Soon after, Aguero Ramirez received notice from Dr. Elias that her Chief of HR position was being reclassified to Director of Professional Development. (*Id.* at 6). The

---

[2]    Aguero Ramirez does not state whether she actually supported the pro-Arredondo faction. While she notes that she "had a close working relationship with Dr. Arredondo and former Board Member and President Ricardo Pedraza," (Dkt. No. 1 at 7), she also notes that she opposed Arredondo's decision to reassign Dr. Elias from his position as principal of PSJA High School, (*id.* at 4).

reclassification notice stated that "[t]he Chief of Human Resources position will no longer exist, nor will anyone replace [Aguero Ramirez] in that position." (*Id.*).  As a result of the reclassification, Aguero Ramirez had her pay reduced to $92,205.74 and she also lost out on a $750/month stipend.  (*Id.*).  Moreover, despite Dr. Elias's statement that the Chief of HR position would not be refilled, Aguero Ramirez alleges that Rebecca Garza, a member of the anti-Arredondo faction whom Aguero Ramirez had replaced as Chief of HR in 2020, "replaced [Aguero Ramirez] and her job duties." (*Id.* at 6–7).[3]

Aguero Ramirez also alleges that there was personal animosity between Dr. Elias and Villegas, and Arredondo and herself.  According to Arredondo, Villegas was not a fan of either him or Aguero Ramirez. (*Id.* at 5).  When Aguero Ramirez and Villegas were first introduced, Villegas allegedly walked away in the middle of the conversation.  (*Id.* at 5–6).  The Complaint also asserts that Dr. Elias, when speaking to Aguero Ramirez, stated "I don't need you, I have my own HR Department." (*Id.* at 6).  According to Aguero Ramirez, the true reason for her demotion was this animosity that resulted from her perceived support of Arredondo and the pro-Arredondo faction.  (*Id.* at 8–9).

On December 2, 2024, Aguero Ramirez filed this suit against Dr. Elias, Villegas, and PSJA ISD.  (Dkt. No. 1).  Defendants filed a joint Motion to Dismiss on February 3, 2025, (Dkt. No. 5), and Aguero Ramirez responded on March 7, 2025, (Dkt. No. 9).

---

[3]    Garza's job title was not changed to Chief of HR after assuming Aguero Ramirez's job duties; she kept her title of Assistant Superintendent for Human Resources.  (*See* Dkt. No. 1 at 6–7).

## II.    LEGAL STANDARD

### A.    RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "lack of subject-matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed. 2d 33 (2021); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1) motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021).

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, LLC v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### B.    RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

5

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). "The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists." *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is

plausible on its face' and thus does not 'raise a right to relief above the speculative level.'"

*Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting

*Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

## III.   DISCUSSION

### A.   RULE 12(b)(1)

Defendants argue that Aguero Ramirez's claims against Dr. Elias and Villegas

should be dismissed for lack of jurisdiction for two reasons: (1) qualified immunity

protects them from suit in their individual capacities, and (2) the claims against them in

their official capacities are duplicative of her claims against PSJA ISD, and thus, should

be dismissed as redundant.  (Dkt. No. 5 at 1, 5–7).  Both arguments fail at this stage.

A Rule 12(b)(1) motion is an improper vehicle for asserting qualified immunity.

Qualified immunity is not a jurisdictional issue and is properly analyzed under a Rule

12(b)(6) standard.  *Espinoza v. Garza*, No. 1:19-CV-00226, 2020 WL 2310022, at *6 (S.D. Tex.

Apr. 6, 2020), *report and recommendation adopted sub nom. Rico Espinoza v. Garza*, No. 1:19-

CV-00226, 2020 WL 2309686 (S.D. Tex. May 8, 2020); *Richard v. Capps*, No. 3:07-CV-00138,

2007 WL 2428928, at *2 n.6 (N.D. Tex. Aug. 28, 2007) (citing *Baker v. Putnal*, 75 F.3d 190,

197 (5th Cir. 1996)).  As such, the Court declines to address Defendants' arguments under

Rule 12(b)(1).  The Court will construe those arguments as being made under Rule

12(b)(6) and will address them in that section.  Likewise, Defendants' argument that the

claims against Dr. Elias and Villegas in their official capacities are duplicative of the claim

against PSJA ISD is also improperly raised under Rule 12(b)(1).  Whether these claims are

duplicative is not a jurisdictional issue, but an issue on the merits.  *See Castro Romero v.*

*Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming a district court's dismissal of claims against non-governmental defendants in their official capacity for duplicity concerns under Rule 12(b)(6)).  The Court will therefore also defer addressing this issue until the Rule 12(b)(6) section.  Because neither argument is proper, Defendants' Motion to Dismiss under Rule 12(b)(1) is denied.

### B.  RULE 12(b)(6)

Next, the Court turns to Defendants' Motion to Dismiss under Rule 12(b)(6).  First, the claims against the individual Defendants and then the claim against PSJA ISD.

#### 1.  Claims Against Individual Defendants

##### a.  Official Capacity Claims

Now under the correct standard, the Court begins by addressing Defendants' duplicity argument.  "The Fifth Circuit recognizes that claims under 42 U.S.C. § 1983 against a state actor in their official capacity are functionally duplicative with the claims against the municipality." *Neri v. City of San Benito*, No. 1:23-CV-00156, 2024 WL 4152699, at *4 (S.D. Tex. Aug. 22, 2024) (citing first *Castro Romero*, 256 F.3d at 355; and then citing *Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996)).  As a result, "it is proper to dismiss allegations against municipal officers in their official capacities when the allegations duplicate claims against the government entity itself." *Thompson v. Connick*, 578 F.3d 293, 297 n.4 (5th Cir. 2009) (Clement, J., separate opinion); *see also Castro Romero*, 256 F.3d at 355.  Here, Aguero Ramirez's Complaint makes no attempt to distinguish between the claims against Dr. Elias and Villegas in their official capacity and PSJA ISD and are thus

duplicative.  The Court dismisses the claims against the individual Defendants in their official capacity.

b.        Individual Capacity Claims

Aguero Ramirez brings claims against the individual Defendants in their individual capacities under 42 U.S.C. § 1983 for violations of the First Amendment.  She alleges that Dr. Elias and Villegas retaliated against her based on their belief that she supported an opposing political faction in the 2022 PSJA ISD election.[4]   Section 1983 creates a private right of action for the deprivation of certain rights.  42 U.S.C. § 1983.  To state a cause of action under Section 1983, a plaintiff must (1) allege that the defendants violated "a right secured by the Constitution and the laws of the United States," and (2) show "a person acting under color of state law" committed the violation.  *Perdomo v. City of League City*, 765 F.Supp.3d 613, 620 (S.D. Tex. 2025) (citing *Peterson v. Johnson*, 57 F.4th 225, 231 (5th Cir. 2023)).

As an initial matter, Aguero Ramirez has alleged that Dr. Elias and Villegas acted under color of state law by using their powers as PSJA ISD officials to demote her for her alleged protected political association.  *See Kallinen v. Newman*, 616 F.Supp.3d 645, 650 (S.D. Tex. 2022) ("The traditional definition of acting under color of state law requires that a defendant . . . have exercised power 'possessed by virtue of state law and made

---

[4]     Aguero Ramirez's Complaint somewhat confusingly lists "Freedom of Association" and "First Amendment Retaliation" as separate headings under the Section 1983 cause of action. (Dkt. No. 1 at 9–10).  Because both headings allege that Defendants demoted Aguero Ramirez in retaliation for her perceived support of the pro-Arredondo faction, the Court construes the Complaint as alleging only a single First Amendment retaliation claim based on political association.

possible only because the wrongdoer is clothed with the authority of state law.'" (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)).   Aguero Ramirez alleges that Dr. Elias had "board delegated authority" to demote her and that Villegas, as the newly elected Board President, approved of the demotion.  (Dkt. No. 1 at 8).

Next, Aguero Ramirez must allege that Dr. Elias and Villegas violated her First Amendment rights.  Defendants assert that she has not met this burden because her allegations are conclusory and do not overcome qualified immunity.  (*See generally* Dkt. No. 5).  "To establish a First Amendment retaliation claim based upon political association, [a plaintiff] must prove that: (1) he suffered an adverse employment action; (2) he was engaged in politically protected activity; (3) his interest in engaging in the protected activity outweighed the defendant's interest in promoting workplace efficiency [also called *Connick-Pickering* balancing]; and (4) that the protected activity was a substantial or motivating factor for the adverse employment action." *Fuller v. Brownsville Indep. Sch. Dist.*, No. 1:13-CV-00109, 2016 WL 3960563, at *8 (S.D. Tex. May 18, 2016) (citing *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014)).  At the motion-to-dismiss stage, "there is a rebuttable presumption that no [*Connick-Pickering*] balancing is required to state a claim." *Burnside*, 773 F.3d at 629.  As such, the Court does not address that element at this stage.

First, "[a]dverse employment actions include 'discharges, demotions, refusal to hire, refusals to promote, and reprimands.'" *Rivera v. Harris Cnty.*, No. 4:19-CV-04920, 2020 WL 3871457, at *4 (S.D. Tex. July 9, 2020) (quoting *Breaux v. City of Garland*, 205 F.3d

150, 157 (5th Cir. 2000)).  In her Complaint, Aguero Ramirez alleges that in December 2022 her Chief of Human Resources position was reclassified to Director of Professional Development by Dr. Elias after Villegas promoted him to Interim Superintendent.  (Dkt. No. 1 at 6).  She claims that while Dr. Elias initially told her that the reclassification would not affect her base salary of $159,000 per year, her salary was later reduced to $92,205.74 per year in August 2023.  (*Id.*).  Aguero Ramirez also alleges that the reclassification resulted in the loss of a $750 monthly stipend that had previously been provided to her. (*Id.*).  Further, despite being told by Dr. Elias that her former position would not be filled, Aguero Ramirez alleges that Rebecca Garza—the current Assistant Superintendent for Human Resources and political ally of the anti-Arredondo faction—replaced her and took over her job duties.  (*Id.* at 6–7).  The Court is thus satisfied that Aguero Ramirez has sufficiently pled an adverse employment action.

Second, Aguero Ramirez must prove that she engaged in (or was perceived to be engaged in) protected political activity.  The contours of what constitutes protected political activity are unclear.  *See Fuller*, 2016 WL 3960563, at *12.  However, "[t]he Fifth Circuit has found that membership—or lack thereof—in a political party or organization is protected [as well as] [s]upporting or opposing a political candidate."  *Id.* (first citing *Steadman v. Tex. Rangers*, 179 F.3d 360, 367 (5th Cir. 1999); and then citing *Cox v. Kaelin*, 577 F.App'x 306, 312 (5th Cir. 2014) (per curiam)).  Here, Aguero Ramirez's Complaint alleges that Dr. Elias and Villegas retaliated against her because of her perceived support of the pro-Arredondo faction in the 2022 election.  (*See generally* Dkt. No. 1).  The Court is satisfied that this perceived electoral support is protected political activity.  *See Heffernan*

11

*v. City of Patterson*, 578 U.S. 266, 136 S.Ct. 1412, 194 L.Ed.2d 508 (2016) (holding that a public employer violates the First Amendment when it retaliates against an employee under the mistaken belief that the employee was engaging in protected political activity).

Finally, Aguero Ramirez must allege that Dr. Elias and Villegas's belief that she was supporting the pro-Arredondo faction was a motivating factor in the decision to demote her.   The Complaint alleges that Dr. Elias and Villegas discussed the "[r]eorganization" of the school district in the event that the anti-Arredondo faction won the election. (Dkt. No. 1 at 5).  As part of this reorganization, Aguero Ramirez asserts that the two men discussed demoting her because of her perceived support for Arredondo. (*Id.*).  She points to several interactions with the two men where Villegas "walked away from [her] while being introduced" and Dr. Elias told her "I don't need you, I have my own HR Department."  (*Id.* at 5–6).  Dr. Elias allegedly made good on this statement by replacing Aguero Ramirez as Chief of Human Resources with Rebecca Garza, a supporter of the anti-Arredondo faction.  (*Id.* at 6–7).  The Complaint further states that Dr. Elias's decision to demote Aguero Ramirez was in part due to her role in effectuating Dr. Elias's July 2022 reassignment by order of Arredondo.  (*Id.* at 3–4).  Such actions indicate that politics played a part in Aguero Ramirez's demotion.  Taking the Complaint as true, these facts plausibly state a claim that Aguero Ramirez's perceived political association with

Arredondo was a motivating factor in the decision to demote her.[5]  Aguero Ramirez has thus successfully stated a claim for First Amendment retaliation under Section 1983.

Before her claim can proceed, however, the Court must also determine whether the facts in the Complaint, taken as true, would overcome the defense of qualified immunity.  *Perdomo*, 765 F.Supp.3d at 620 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).  "Qualified immunity 'shields [government officials] from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12, 142 S.Ct. 9, 11, 211 L.Ed.2d 170 (2021)).  Thus, to overcome qualified immunity, Plaintiff must show (1) whether the facts alleged, taken as true, show a constitutional violation; and (2) whether the right was clearly established in light of existing precedent.  *Mullenix v. Luna*, 577 U.S. 7, 11–12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015).

While Aguero Ramirez has successfully pled a constitutional violation, she must also show that the violation contradicted clearly established law.  To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* at 11, 136 S.Ct. at 308 (citing *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)) (internal

---

[5]    The Court is not convinced, however, that Aguero Ramirez's references to a parade in which she rode on a float with Arredondo and members of the pro-Arredondo faction demonstrate that politics were a motivating factor in her demotion.  (*See* Dkt. No. 1 at 7).  Aguero Ramirez does not allege that either Dr. Elias or Villegas were at the parade, that they saw her on float, that they saw the photograph, or that they were even aware she was in the parade.

13

quotations omitted).   Further, "the clearly established right must be defined with specificity."  *City of Escondido v. Emmons*, 586 U.S. 38, 42, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).  While a plaintiff need not point to "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S.Ct. 4, 7–8, 211 L.Ed.2d 164 (2021) (per curiam).  The inquiry "is judged against the backdrop of the law at the time of the conduct."  *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (per curiam) (internal quotation marks omitted).  Simply put, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Perdomo*, 765 F.Supp.3d at 620 (quoting *City of Tahlequah*, 595 U.S. at 12, 595 S.Ct. at 11).

Aguero Ramirez cites several Supreme Court cases to assert that it is clearly established "that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment Rights."  (Dkt. No. 1 at 10–11).  Specifically, Aguero Ramirez points to several cases where the Supreme Court held that government officials violated the rights of public employees when the officials fired them for their political affiliation. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (holding that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of [non-policymaking] public employees"); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (holding that a public employer violated the First Amendment when it fired employees because they were Republicans); *Elrod v. Bums*, 427 U.S. 347, 96

14

S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (holding that a sheriff violated the First Amendment when they replaced or fired non-civil-service employees that supported a different political party).  She asserts that such retaliatory employment decisions are clearly established violations of the First Amendment, even when an employer's belief of its employee's political affiliation is incorrect.  (Dkt. No. 1 at 10–11 (citing *Heffernan*, 578 U.S. 266, 136 S.Ct. 1412)).

Defendants dispute the applicability of *Heffernan*, arguing that, unlike in that case, Aguero Ramirez does not allege any intent on the part of Dr. Elias or Villegas to deprive her of her rights.  (Dkt. No. 5 at 6–7).  This argument is unpersuasive.  First, Defendants do not seem to dispute that it is clearly established that a public employer may not fire or demote a non-policymaking employee on the basis of their political affiliation.  Instead, Defendants merely assert that Aguero Ramirez has failed to plead that Dr. Elias and Villegas reclassified her position because of her (perceived) affiliation with the anti-Arredondo faction.  This is incorrect.  Aguero Ramirez's Complaint consistently alleges that Defendants retaliated against her because she was perceived as backing Arredondo in the School Board election.  (*See generally* Dkt. No. 1).  In particular, the Complaint alleges that Dr. Elias and Villegas discussed prior to the election that "[Aguero Ramirez] would be demoted as it was Villegas and Dr. Elias'[s] belief that [she] was politically supporting the pro-Arredondo faction of candidates."  This allegation, taken as true, is an allegation that Defendants intended to retaliate against Aguero Ramirez for her political associations.  Because the Court agrees with Aguero Ramirez that her Complaint alleges that Defendants violated clearly established Supreme Court precedent, the Court

holds that she has pled facts that overcomes qualified immunity at the motion-to-dismiss stage.[6]

### 2.    **Claim Against PSJA ISD**

The Court next addresses the claim against the municipality itself, PSJA ISD. Defendants argue that Aguero Ramirez's *Monell* claim fails because she does not allege a PSJA ISD policy or custom that caused her harm, nor does she allege that Dr. Elias or Villegas acted in a policymaking capacity. (Dkt. No. 5 at 8–9). The Court is unpersuaded. "A person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (first citing 42 U.S.C. § 1983; and then citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). *Monell* claims have three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Perdomo*, 765 F.Supp.3d at 625 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). *Monell* liability does not arise through vicarious liability: it must be directly attributable to official action.

---

[6]    The Court notes that it is unclear from Aguero Ramirez's Complaint whether her position as Chief of Human Resources was a policymaking position where "party affiliation is an appropriate requirement" in employment. *Rutan*, 497 U.S. at 64, 110 S.Ct. at 2731–32. While this is an important consideration in the *Connick-Pickering* balancing test that may affect the validity of her claims, *see Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir. 1992) (noting that "policymaking or confidential employees' First Amendment rights are more easily outweighed in balancing interests"); *but see Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995) (noting that an employee's First Amendment interests are not automatically outweighed because they held a policymaking position), that element of a First Amendment retaliation claim is not considered at the motion-to-dismiss stage. *Fuller*, 2016 WL 3960563, at *12. Therefore, this omission does not doom Aguero Ramirez's Complaint.

*Id.* Importantly, no *Monell* claim can exist unless the plaintiff pleads a constitutional violation. *Id.*

The Court first analyzes the official-policy prong. Claims under a theory of official policy may take one of two forms. First, it may be "a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking authority." *Martinez v. Rojo*, No. 1:17-CV-00102, 2020 WL 2542612, at *6 (N.D. Tex. May 19, 2020) (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003)). Second, it may be "'[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that,' in effect, 'fairly represents municipal policy.'" *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)) (alteration in original). Under the former theory, "it is well established that a municipality may be liable for 'course[s] of action tailored to a specific situation and not intended to control decisions in later situations,' provided that 'the decision to adopt the particular course of action is properly made by that government's authorized decision makers.'" *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). The meaning of "policy" "is not exhausted by 'fixed plans of actions to be followed under similar circumstances consistently and over time.'" *Id.* (quoting *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. at 1298–99); *see also Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298 ("No one has

17

ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body.").

Aguero Ramirez has pled that Dr. Elias, acting pursuant to authority delegated to him by Villegas and the newly elected Board, used his new position as Interim Superintendent to demote her because of her political affiliation with the pro-Arredondo faction. (Dkt. No. 1 at 5–6, 8–9). This plainly constitutes a "policy" attributable to PSJA ISD under *Monell* and *Pembaur*. Moreover, it is clear that Villegas, as Board President, and Dr. Elias, as Interim Superintendent with Board-delegated authority to reclassify Aguero Ramirez's position, were municipal policymakers with actual knowledge of the policy considering they were the ones to effectuate it. *See Piotrowski*, 237 F.3d at 579 ("'Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy making authority.'" (quoting *Webster*, 735 F.2d at 842)). Because the constitutional violation Aguero Ramirez alleges is her retaliatory demotion resulting from her perceived support of the anti-Arredondo faction, she has established that the "moving force" behind her violation was the alleged policy. *Perdomo*, 765 F.Supp.3d at 625. Aguero Ramirez's Complaint thus states a claim for *Monell* liability against PSJA ISD. Defendants' Motion to Dismiss, (Dkt. No. 5), must be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss, (Dkt. No. 5), as to the claims against Dr. Elias and Villegas in their official capacity and **DENIES** the Motion as to the individual-capacity claims and the *Monell* claim against

PSJA ISD.   The claims against Dr. Elias and Villegas in their official capacity are **DISMISSED with prejudice**.   No additional 12(b)(6) motions will be considered. Defendants may file a summary judgment motion, if appropriate, after the Parties have had the opportunity to engage in discovery

It is SO ORDERED.

Signed on March 30, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

19